IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JACOB L. L. SMITH, #10758-122,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ESTELA DERR, *et al.*,<br><br>　　　　　Defendants. | Civ. No. 22-00134 JMS-KJM<br><br>ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND |

## **ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND**

Before the court is a Prisoner Civil Rights Complaint ("Complaint") filed by pro se Plaintiff Jacob L. L. Smith ("Smith") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). ECF No. 1.  Smith alleges that two officials[1] at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu") retaliated against him (Count I) and threatened his safety (Count II).  ECF No. 1 at PageID ## 4–6.  For the following reasons, the Complaint is DISMISSED for failure to state a claim for relief, but

---

[1] Smith names as Defendants Warden Estela Derr ("Warden Derr") and Lieutenant Shawn Tabar ("Tabar") in both their individual and official capacities.  ECF No. 1 at PageID ## 1–2.  Although Smith identifies "Shawn Tabor" as "Second Defendant," *id*. at PageID # 2, in each additional instance throughout the remainder of the Complaint, Smith refers to that Defendant as "Tabar," *see id*. at PageID ## 1, 4-5.

with partial leave granted to amend. *See* 28 U.S.C. § 1915A(b)(1). If Smith wants this action to proceed, he must file an amended pleading that cures the noted deficiencies on or before July 8, 2022. In the alternative, Smith may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

## I. STATUTORY SCREENING

Pursuant to 28 U.S.C. § 1915A(a), the court is required to screen all civil actions filed by prisoners seeking redress from a government entity or an officer or employee of a government entity.[2] *See Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). During screening, the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. § 1915A(b); *Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). "If the . . . court determines that any of these grounds is satisfied, it must dismiss the case, and enter a 'strike' against the plaintiff prisoner." *Byrd*, 885 F.3d at 641.

Failure to state a claim under 28 U.S.C. § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal

---

[2] Smith paid the fees associated with this lawsuit, so he is not proceeding in forma pauperis. *See* ECF No. 5.

Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

During screening, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  When it is clear a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND[3]

Smith is currently incarcerated at FDC Honolulu.  *See* ECF No. 1 at PageID # 1; Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (select "Find By Number," enter "10758-122" in "Number" field, and select

---

[3] Smith's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

3

"Search") (last visited June 8, 2022). He is awaiting sentencing in *United States v. Smith*, Cr. No. 20-00086 DKW (D. Haw.).[4]

Smith commenced this action by signing the Complaint on March 22, 2022. ECF No. 1 at PageID # 8. He paid the required fees on May 9, 2022. ECF No. 5.

Smith alleges in Count I that Lieutenant Tabar retaliated against him by processing a February 15, 2022 "incident report."[5] ECF No. 1 at PageID # 4. The incident report noted that Smith had issues with his "equilibrium." *Id.* Smith took a urinalysis, and the results were negative. *Id.* The incident report was later dismissed. *Id.* at PageID ## 4–5. According to Smith, other unidentified prison officials submitted "false" claims against him on at least three additional occasions. *Id.* at PageID # 5. According to Smith, these prison officials accused him of participating in a riot, fighting, and using a controlled substance. *Id.*

Smith alleges in Count II that Warden Derr threatened his safety. *Id.* at PageID # 6. According to Smith, he was housed in unit 5A with "deportable

---

[4] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of relevant federal records available electronically. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through [public access to court electronic records]." (citations omitted)).

[5] Although Smith makes a passing reference to Warden Derr in Count I, he does not say what, if anything, Warden Derr had to do with the incident reports. *See* ECF No. 1 at PageID ## 4–5.

alien gang members." *Id.*  Smith alleges that, as an inmate awaiting sentencing, he should not be housed with these inmates.  *Id.*

Smith seeks $15,000 and an "Order of Protection against both Defendants preventing them from further harassment and retaliation against [him]."  *Id.* at PageID # 8.

### III.  DISCUSSION

**A.  Legal Framework for *Bivens* Claims**

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted).  *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  *See Bivens*, 403 U.S. at 389–90.  Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice.  *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1855 (2017) ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth

5

Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[6] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. ___, slip op. at 17 (U.S. June 8, 2022).

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that

---

[6] The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843.

is the end of the matter. If a claim is not precluded, courts then apply a two-step test.

At step one of that test, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951 (internal quotation marks and citation omitted). "Second, there cannot be any 'special factors' that lead the court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951–52 (some internal quotation marks, brackets, and citation omitted). Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58. "If there is even a single 'reason to pause before applying *Bivens* in a

new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at

___, slip op. at 7.

## B. Official Capacity Claims Under *Bivens*

Smith names the Defendants in both their individual and official capacities. *See* ECF No. 1 at PageID ## 1–2.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted). "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (citation omitted). Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Defendants in their official capacities are therefore DISMISSED with prejudice.

## C. Supervisory Liability

Smith names as Defendants two supervisory officials at FDC Honolulu—that is, the warden and a lieutenant. ECF No. 1 at PageID ## 1–2.

"In the limited settings where *Bivens* does apply, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). This is because "[t]he purpose of *Bivens* is to deter the *officer*." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1860 (internal quotation marks and citation omitted) (emphasis in original). "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Id.* (citation omitted).

A *Bivens* claim must be "brought against the individual official for his or her own acts, not the acts of others." *Id.*; *see also Jones v. McFadden*, 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged." (citations omitted)). Thus, to state a claim for relief under *Bivens* based on a theory of supervisory liability, the plaintiff must allege facts showing that supervisory defendants:

> (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks and other citation omitted).

Any claims against Warden Derr or Tabar solely based on their supervisory positions are DISMISSED with prejudice. *See Fries v. Kernan*, 2018 WL 11260954, at *9 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim."). For a claim against Warden Derr or Tabar to proceed, Smith must plausibly allege that each of them violated his rights by their own actions. *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

### D. First Amendment–Retaliation

Smith alleges in Count I that Tabar retaliated against him by processing a February 15, 2022 incident report. ECF No. 1 at PageID ## 4–5.

The First Amendment prohibits prison officials from retaliating against prisoners for exercising their First Amendment rights. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). The Supreme Court, however, has held that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. \_\_\_, slip op. at 14. In reaching this conclusion, the Court explained that "[e]xtending

*Bivens* to alleged First Amendment violations would pose an acute risk of increasing" substantial social costs "including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* (internal quotation marks and citation omitted); *see also Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019) (concluding that "special factors counsel against extending *Bivens*" to a prisoner's First Amendment retaliation claim). "Federal employees 'face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] would be deterred from' carrying out their duties." *Egbert*, 596 U.S. ___, slip op. at 14 (citation omitted) (alterations in original). Considering these costs, the Court concluded that "'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.*, 596 U.S. ___, slip op. at 15 (citation omitted). Thus, Tabar's First Amendment retaliation claim brought pursuant to *Bivens* cannot proceed and is DISMISSED with prejudice.

**E.  Eighth Amendment–Threat to Safety**

Smith alleges in Count II that Warden Derr threatened his safety. ECF No. 1 at PageID # 6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat to safety claim. *See Eads v.*

*United States*, 2020 WL 13169462, at *4 (D. Ariz. Dec. 18, 2020) ("Put simply, the Supreme Court has not recognized a *Bivens* cause of action for . . . Eighth Amendment threat-to-safety claims."). The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety. *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim.").

Even assuming, for purposes of screening, that a *Bivens* remedy exists for an Eighth Amendment threat to safety claim, Smith's threat to safety claim must be dismissed. *See Hernandez*, 582 U.S. ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy—is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim.").

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citation omitted). Prison officials,

therefore, "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quotation marks and citation omitted) (ellipsis in original).

A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation must be objectively, sufficiently serious[.]" *Id.* at 834. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must show deliberate indifference—that is, that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, Smith has not plausibly alleged that being housed in unit 5A created a substantial risk of serious harm. Indeed, Smith does not allege that any inmate has harmed him, attempted to harm him, or even threatened to do so during his time in unit 5A. The fact that unit 5A might house some violent inmates, without more, does not amount to a substantial risk of serious harm. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct.").

To the extent Smith is suggesting that housing members of different gangs together necessarily amounts to an Eighth Amendment violation, ECF No. 1 at PageID # 6, he is mistaken. *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, 'the number of gang members housed and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (alterations omitted)); *Wilson v. Pierce County*, 2017 WL 3876625, at *7 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment." (citing *Labatad*, 714 F.3d at 1160)).

In addition, Smith has not plausibly alleged that Warden Derr acted with deliberate indifference to his safety. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard."). Smith does not allege that he complained to any prison official, let alone to Warden Derr, about his safety in unit 5A. In short, Smith fails to allege that Warden Derr was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [he] also [drew] the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057 ("[T]he prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious

14

harm exists, but that person must also draw the inference." (internal quotation marks and citation omitted)). Thus, Smith threat to safety claim is DISMISSED with leave granted to amend.

### F. Injunctive Relief Under *Bivens*

In his request for relief, Smith seeks $15,000 and an "Order of Protection against both Defendants preventing them from further harassment and retaliation against [Smith]." *Id.* at PageID # 8.

"*Bivens* does not encompass injunctive and declaratory relief[.]" *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)); *Bacon v. Core Civic*, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) ("[I]injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities." (footnote omitted)). Thus, to the extent Smith seeks injunctive relief in this action, such relief is not available under *Bivens*.[7]

---

[7] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (citation omitted). To bring such a claim, a prisoner must:

> (1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts to state a colorable ongoing Eighth Amendment claim, (3) name as a defendant the
> (continued . . .)

## IV. **LEAVE TO AMEND**

The Complaint is DISMISSED with partial leave granted to amend. Smith may file an amended pleading on or before July 8, 2022. Smith may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Smith must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii. Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form. *See* LR99.2(a). An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Defendants not renamed and claims not realleged in an amended

---

person who would be responsible for carrying out any order for injunctive relief, and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation.

*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations."). For the reasons set forth above, however, Smith fails to state a colorable threat to safety claim.

complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.  28 U.S.C. § 1915(g)

If Smith fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915A(b).

(2) Smith may amend his pleading, however, by curing the noted deficiencies on or before July 8, 2022.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Smith may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Smith may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Smith a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 8, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Smith v. Derr et al.*, Civ. No. 22-00134 JMS-KJM, Order Dismissing Prisoner Civil Rights Complaint, ECF No. 1, with Partial Leave to Amend